**UNITED STATES DISTRICT COURT**
**SOTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
**DARIUS ROBUSTELLI,**

                          **Plaintiff,**                **COMPLAINT-**
                                                     **JURY TRIAL**
  **-against-**

                                                            **Index #:**

**MOBILE LIFE SUPPORT SERVICES, INC.**


                          **Defendant.**
------------------------------------------------------------------------X

Plaintiff, DARIUS ROBUSTELLI, by and through his attorneys, Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf, & Carone LLP, complains and alleges as follows:

## INTRODUCTORY STATEMENT

Mobile Life Support Services, Inc. terminated Darius Robustelli, a 20 year paramedic, simply because he legally utilized CBD Oil, a marijuana derivative, at the direction of his physician to treat his symptoms of Post-Traumatic Stress Disorder. If he used traditional psychiatric medications to treat his symptoms, which started after responding to calls where he witnessed severely injured infants within a three month time span, Mobile Life would have granted him an accommodation and allowed him to continue to work without questions. But, Mr. Robustelli tried traditional forms of medication and they either caused him side effects, or were not effective. He turned to CBD Oil after discussing the matter with his physician and achieved relief of his symptoms. Mobile Life left him with a decision; treat your illness or keep your job. Both the Americans with Disabilities Act and the New York State Human Rights Law were enacted to ensure that no employee should have to make this type of Sophie's Choice where they have to pick between their livelihood and their health. Despite the fact that New York State has

legalized the use of medical marijuana for those properly certified, it still contains a significant stigma. It is this stigma that caused Mobile Life to refuse his accommodation request and ultimately was the reason for his termination.

Mr. Robustelli now seeks this Court's intervention to not only compensate him for the significant losses he suffered when he lost his job, but to ensure that others like him that legally use medical marijuana are not discriminated against in the future.

## JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this court pursuant to the following provisions: 28 U.S.C. § 1331, which authorizes original jurisdiction to the District Court of all civil actions arising under the Constitution, laws or treaties of the United States; 28 U.S.C. §1343 (a)(3) which grants jurisdiction to the District Court for any action to recover damages or to secure equitable or other relief under an act of Congress providing equal rights of citizens or of all persons within the jurisdiction of the United States.

2. Venue is proper pursuant to 28 U.S.C. §1391(e), which provides that a civil action may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred.

## THE PARTIES

3. The plaintiff is a resident of the State of New York.

4. The defendant is a private corporation, located at 3188 Route 9W, New Windsor, NY 12553, duly authorized to conduct business in the State of New York

## **RELEVANT STATUTORY SCHEME**

<u>Americans with Disabilities Act</u>

5.  The Americans with Disabilities Act ("ADA") protects people with a disability in their employment. 42 U.S.C. § 12112

6.  The ADA defines the term disability to mean an individual with a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12102 (1).

7.  It is a violation of the ADA for an employer to fail to provide a reasonable accommodation to an employee with a disability unless that accommodation would pose an undue hardship. 42 U.S.C. § 12112 (b)(5)(A).

8.  In order to determine the appropriate reasonable accommodation for an employee the employer is mandated to engage in an interactive process with the employee to determine his precise limitations and how to accommodate him. 29 C.F.R. §1630.2 (o)(3).

9.  It is a violation of the ADA for an employer to terminate an employee based upon a disability. 42 U.S.C. § 12112 (a).

10. While the ADA does not protect individuals who use illegal substances pursuant to the Controlled Substances Act, it excludes substances "taken under supervision by a licensed healthcare professional…" 42 U.S.C. § 12210 (a) & (d)(1).

<u>New York Human Rights Law and Compassionate Care Act</u>

11. Similar to the ADA, the New York Human Rights Law makes it illegal to discriminate against individuals with a disability in their employment. N.Y. Exec. Law §290.

12. The law defines the term disabled as a "physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function…" N.Y. Exec. Law §292 (21).

13. Moreover, the New York Compassionate Care Act states that any individual certified to use medical marijuana is deemed disabled, as that term is defined by the Human Rights Law. N.Y. Public Health Law §3369 (2).

14. The Human Rights Law requires employers to make reasonable accommodation to disabled employs. N.Y. Exec. Law §296 (3).

15. Further, the Human Rights law also makes it illegal to terminate an employee due to his or her disability. N.Y. Exec. Law §296 (a)(1).

## **FACTS**

16. Mr. Robustelli has been a licensed paramedic for 20 years.

17. He began working for Mobile Life on June 3, 2013, as a paramedic.

18. Mobile Life is a New York state certified paramedic and ambulance company providing services to hospitals and the public in Orange, Rockland, Dutchess and Ulster Counties.

19. During his time at Mobile Life Mr. Robustelli was repeatedly praised for his work and he never received any reprimands or was noted for workplace infractions.

20. In January, 2018, while working as a paramedic for Mobile Life, Mr. Robustelli responded to a call with a deceased infant.

21. A few months later in March, 2018, he responded to another call with an infant who suffered serious injuries at the hands of an abusive adult.

22. As a paramedic Mr. Robustelli has seen a great deal of tragedy in his professional career, but these back to back calls with injured and dead infants significantly affected him.

23. He started to have serious problems sleeping, waking up with night terrors and cold sweats multiple times per night.

24. In addition he suffered anxiety and difficulties with concentration. It affected his personal relationships and his daily functioning.

25. As a result of these impacts upon his daily living activities he sought treatment with a Nurse Practitioner in late March, 2018.

26. He was diagnosed with Post Traumatic Stress Disorder.

27. Initially he treated with traditional psychiatric medications, such as Seroquel and Trazadone, but these medications were not effective to treat his symptoms and caused unacceptable side effects as well.

28. Mr. Robustelli began conducting research to find a more effective treatment for his illness and discovered that CBD oil has been shown to treat the symptoms of PTSD.

29. CBD oil is a derivative of the marijuana plant that does not cause psychoactive effects or impair the user like normal marijuana does. It has been shown to have anti-anxiety like principals and creates a calming affect in the user.

30. While the CBD oil that Mr. Robustelli treats with does contain trace amounts of THC, the psychoactive chemical in marijuana, it is not impairing.

31. After his independent research Mr. Robustelli discussed the potential use of CBD oil with his primary care physician and the doctor recommended he use CBD oil as a treatment for his PTSD symptoms.

32. As a result, on July 31, 2018, Mr. Robustelli obtained a medical marijuana card, pursuant to New York's Compassionate Care Act. <u>See</u> Public Health Law §3360, *et. seq.*

33. Mr. Robustelli obtains his CBD oil from eTain Health, a duly licensed medical marijuana facility with four locations. Mr. Robustelli utilizes the Kingston, NY location.

34. While Mobile Life maintains a reasonable policy that paramedics cannot use illegal drugs, it does not regularly test its employees for drug use.

35. It is their policy to only test paramedics for the use of drugs when they are hired and if they have been involved in a motor vehicle accident.

36. Mr. Robustelli was tested when he was first hired in 2013, but was never tested after that.

37. Because there was a possibility that he may be tested at some point in the future Mr. Robustelli took a home drug test.

38. The test results were positive.

39. He asked his physician to repeat the test and the results were the same.

40. While he could have kept this information secret from his employer he decided the only honest thing to do would be to inform his employer of the situation thinking they would provide him a reasonable accommodation as is required pursuant to New York State and federal law.

41. Mr. Robustelli informed Richard Miller, Director of Field Operations, and his supervisor, about his use of CBD oil and the positive drug test.

42. At first Mr. Miller was supportive and informed Mr. Robustelli that his health was a paramount and that his job would not be in jeopardy. He stated that Mobile Life would offer

6

whatever accommodation was necessary so that Mr. Robustelli could continue to utilize the medication he required for his illness, and keep his job as a paramedic.

43. Mr. Miller's statement unfortunately proved untrue.

44. Soon thereafter, in late July, 2018, Emily Smith, Director of Human Resources, informed Mr. Robustelli that he had to take a leave of absence pursuant to the Family Medical Leave Act because he could not work as a paramedic if he would test positive for marijuana.

45. Mobile Life denied his request for a reasonable accommodation to continue to work despite a positive drug test.

46. Mr. Robustelli provided documentation from his physician indicating that he was medically cleared to return to work, but Ms. Smith informed him that he could not return to work so long as he would test positive for marijuana.

47. Mr. Robustelli was left with the choice ignoring his illness and the resumption of sleepless nights with night terrors so that he could return to work, or be terminated.

48. Mobile Life's concern was twofold: One, they were concerned that he may be impaired while working and two, that they would suffer increased liability as a result of a positive drug test if there was an accident or poor patient outcome.

49. Mr. Robustelli suggested that they conduct a more sensitive drug test that would test the level of THC in his blood to determine if he was impaired, as opposed to a simple positive or negative test.

50. They denied that request despite the fact that Mr. Robustelli had been treating with CBD oil for months and without any incident.

51. He also offered to allow Mobile Life to speak to his medical treaters so that they could provide further information regarding his lack of impairment, but they refused that offer as well.

52. On November 5, 2018, Mobile lIfe sent mr. Robustelli a letter indicating that he was terminated because he did not return to work after his FMLA leave expired on October 22, 2018. The irony of the letter was not lost on Mr. Robustelli because he never even wanted to take FMLA leave, but Mobile Life forced him to and refused to allow him to return to work because he chose to treat his illness.

53. Mr. Robustelli filed a complaint with the Division of Human Rights on October 25, 2018.

54. He received a Right to Sue Letter from the EEOC on April 18, 2019.

## CLAIMS FOR RELIEF

### First Cause of Action

55. The plaintiff repeats and realleges each and every allegation contained herein.

56. By refusing to grant Mr. Robustelli a reasonable accommodation with respect to his disability, Mobile Life violated 42 U.S.C. §12112 (b)(5)(A), 24 C.F.R. §84.12, and N.Y. Exec. Law §296 (3).

### Second Cause of Action

57. The plaintiff repeats and realleges each and every allegation contained herein.

45. By terminating Mr. Robustelli due to his disability Mobile Life violated 42 U.S.C. §12112(a), 29 U.S.C. §794, and N.Y. Exec. Law §296(a)(1).

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(A) A jury trial;

(B) Judgment against the defendants County of Nassau and the Nassau County Police Department, pursuant to 28 U.S.C. §2201 and Fed R. Civ. P. 57, declaring that the actions of the defendant has violated 42 U.S.C. §12112 (b)(5)(A), 24 C.F.R. §84.12 and N.Y. Exec. Law §296(3);

(C) Judgment against the defendants County of Nassau and the Nassau County Police Department, pursuant to 28 U.S.C. §2201 and Fed R. Civ. P. 57, declaring that the actions of the defendant has violated 42 U.S.C. §12112(a), 29 U.S.C. §794, and N.Y. Exec. Law §296(a)(1);

(D) Compensatory damages in an amount to be determined at trial;

(E) Punitive damages in an amount to be determined at trial;

(F) Attorney's fees pursuant to 42 U.S.C. §12205;

(G) Costs and disbursements; and

(H) Any other relief that this Court deems just and proper

Dated: May 14, 2019
Lake Success, New York

*Eric Broutman*
Eric Broutman
Abrams, Fensterman, Fesnterman, Eisman,
Formato, Ferrara, Wolf, & Carone, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
(516) 592-5857
` EBroutman@Abramslaw.com